IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP CROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 07-0740-KD-C |
| ) | |
| COOPER MARINE & TIMBERLANDS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on plaintiff, Phillip Crow's motion for partial summary judgment (doc. 35) defendant, Cooper Marine & Timberlands Corporation's response in opposition (doc. 37) and plaintiff's reply brief (doc. 38).  Upon consideration, and for the reasons set out herein, the motion for partial summary judgment is **GRANTED**.

I.      Procedural History

This action arises from an injury plaintiff alleges he sustained while employed by defendant as a deckhand on defendant's vessel, the M/V CRIMSON WHITE.  On October 15, 2007, plaintiff filed the instant complaint against defendant alleging negligence under the Jones Act, 46 U.S.C. § 30104 and under General Maritime law for unseaworthiness and for maintenance and cure.  Plaintiff alleges, in sum, that in the course of his employment on defendant's vessel he stepped "in a gang plankless vessel devoid of a safe means of ingress and egress" and suffered an injury to his person.

1

Defendant filed an answer to the complaint on December 18, 2007. On November 20, 2008, defendant filed an amended answer to withdraw certain affirmative defenses and add a counterclaim. It is defendant's counterclaim for recoupment of maintenance and cure payments made to plaintiff that is the subject of the instant motion.

II.     Factual Background [1]

Plaintiff, Phillip Crow, was employed by defendant on January 24, 2006, as a pilot aboard defendant's vessels.[2]  As a condition of his employment, plaintiff underwent a United States Coast Guard Merchant Mariner physical examination which was conducted by Dr. Steven Andrews, M.D., the company's contract medical provider. The examination, which included an evaluation of Crow's musculoskeletal system including his lower extremities, did not reveal any abnormalities, physical impairments or limitations.

On June 4, 2007, plaintiff suffered a meniscal[3] tear to his right knee while descending a waterslide at a waterpark. Plaintiff reported the incident to his employer and was off work until July 5, 2007, when he was released to return to work without restrictions by his physician.

Gerald Bowe, a deckhand working with plaintiff, testified that on or about August 7,

---

[1] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. See Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir.2004); Johnson v. Governor of State of Fla., 405 F.3d 1214, 1217 (11th Cir.2005).

[2] In answer to the complaint defendant states that Crow was employed as a deckhand. (Doc. 34 at ¶ 3) In response to plaintiff's interrogatories, defendant states that plaintiff was initially hired as a "Contract Pilot" in January 2006, that his status changed to "Floater Pilot" in March 2006 and then to "Pilot" in August 2006. (Doc. 37, Exhibit 10)

[3] The medial meniscus of the knee is a crescent-shaped cartilage pad between the two joints formed by the femur (the thigh bone) and the tibia (the shin bone). The meniscus acts as a smooth surface for the joint to move on.

2007, he observed plaintiff slip and fall in a Wal-Mart parking lot, injuring his left knee, while they were buying supplies for the vessel. Richard Wyatt, the captain of the M/V CRIMSON WHITE, maintains that shortly after plaintiff boarded the vessel on August 7, 2007, he commented to Captain Wyatt that his left knee was bothering him, and that he was going to have to have surgery on his left knee.[4]

Plaintiff contends that he sustained an injury to his left knee while attempting to board the CRIMSON WHITE on the evening of August 12, 2007. Specifically, plaintiff states that as he was boarding the vessel he injured his knee while stepping from a dock onto the top of a push-knee[5] of the vessel. There were no witnesses to the August 12, 2007 accident.

Plaintiff reported the injury to the vessel's captain as well as to the defendant's claims representative on the morning of August 13, 2007 and an accident report was completed. The injury was also recorded in the vessel's Log Book. Following the injury, plaintiff continued to perform his duties and completed his hitch on the vessel, which ended on August 14, 2007.

Plaintiff also reported the injury to his family physician who referred him to an orthopedic specialist. On August 17, 2007, plaintiff met with Dr. Lee Nichols, M.D., for an evaluation of his knee injury. Plaintiff advised Dr. Nichols that he injured his knee as he stepped from the dock onto the vessel and that he felt a painful pop or snap in his knee which quickly swelled. Plaintiff was diagnosed with a torn meniscus. On August 20, 2007, plaintiff underwent diagnostic arthroscopy including resection of the fragment of meniscus. On October 17, 2007,

---

[4] Plaintiff denies that he fell in the Wal-Mart parking lot and further denies that he made any comment to Captain Wyatt regarding an injury to his left knee.

[5] A "push-knee", also known as a "tow knee" is a vertical structure installed on a towboat to facilitate the pushing of barges.

plaintiff was released to work without restrictions, but thereafter resigned his position with defendant. Plaintiff is currently employed as a pilot for All American Marine.

From August 12, 2007, to October 17, 2007, defendant made payments to plaintiff for maintenance in the amount of $1,300.00, for cure and medical expenses in the amount of $9,366.22, and for unearned wages in the amount of $11,507.60.

III.     Summary Judgment Standard

Summary judgment should be granted only if "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.[6] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the nonmoving party fails to make "a sufficient showing on an essential element of her

---

[6] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56©.

4

case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992), cert. denied, 507 U.S. 911, 113 S. Ct. 1259, 122 L. Ed. 2d 657 (1993) (internal citations and quotations omitted). The mere existence of any factual dispute, however, will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of the Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081, 125 S. Ct. 869, 160 L. Ed.2d 825 (2005).

IV.     Discussion[7]

Defendant's counterclaim alleges, in sum, that the plaintiff misrepresented that he injured his left knee while attempting to board the M/V CRIMSON WHITE and further misrepresented that the injury was not caused by a prior incident or preexisting injury. (Doc. 34 at ¶¶ 4-6) Defendant maintains that it relied on these misrepresentations and made payments to plaintiff for

---

[7] Because the parties have not specifically raised the issue the Court assumes that a claim for recoupment is viable in this circuit. See Souviney v. John E. Graham & Sons, 1994 WL 416643 (S. D. Ala., 1994)(unpublished) (as a result of plaintiff's admission that he lied on his preemployment medical examination the court concluded that the employer was entitled to recoup maintenance and cure already paid to plaintiff); but see Patterson v. Allseas USA, 145 Fed. Appx. 969, *1 (5th Cir. 2005) ("The issue of whether a shipowner may affirmatively recover maintenance and cure payments it makes to a seaman if the shipowner makes these payments before learning of the seaman's deceptive conduct was not before the court in McCorpen, and we have not located a published appellate court decision addressing this issue.")

maintenance and unearned wages totaling $22, 173.82.  (Id. at ¶ 7) Defendant contends that as a result of these payments "Crow has been unjustly enriched to the detriment of Cooper Marine...and [t]herefore, Cooper Marine is entitled to recoup all maintenance, cure, and unearned wages paid to Crow on account of the injuries he claims were suffered on the M/V CRIMSON WHITE on August 12, 2007...."  (Id. at ¶¶ 8-10)

Plaintiff moves for summary judgment on the grounds, in sum, that defendant has failed to produce any medical testimony to support the allegation that plaintiff sustained an injury to his left knee prior to the date of the incident made the basis of this lawsuit, or that plaintiff concealed such information from defendant.  Plaintiff suggests that while defendant's arguments regarding fault and negligence may be relevant to plaintiff's claims under the Jones Act and general maritime law, they are irrelevant to the issue raised in the instant motion.  Rather, plaintiff contends that the question of whether a seamen is entitled to maintenance and cure is a medical, rather than a legal question.

Defendant argues that there is evidence suggesting that plaintiff injured his left knee *before* he reported for duty on August 7, 2007, *before* the alleged Wal-Mart fall witnessed by Gerald Bowe and *before* the alleged fall boarding the M/V CRIMSON WHITE on August 12, 2007.  Defendant maintains that this "evidence", which consists of a comment made by Captain Wyatt, Gerald Bowe's testimony that plaintiff fell at Wal-Mart, and a comment made by one of plaintiff's treating physicians, creates a question of fact whether plaintiff was entitled to maintenance, cure and unearned wages.

"Maintenance and cure is the obligation imposed on a shipowner, which results from the contract between the seaman and the shipowner or vessel, to pay a seaman, who is ill or injured

while in the service of the ship, 'wages to the end of the voyage and subsistence, lodging and care to the point where the maximum cure attainable has been reached.'" Bloom v. Weeks Marine, Inc., 225 F.Supp.2d 1334, 1335 (M. D. Fla. 2002) quoting 2 Martin J. Norris, The Law of Seamen § 26:2 (4th ed.1985).   The historical purpose of maintenance and cure was to protect the health and safety of the "poor and friendless" seamen. Flores v. Carnival Cruise Lines, 47 F.3d 1120, 1122 (11th Cir.1995); see generally  Garay v. Carnival Cruise Line, Inc., 904 F.2d 1527, 1533 & n. 7 (11th Cir.1990) (pointing out that seaman's right to maintenance and cure dates back to ancient codes of the sea promulgated as far back as 1200 A.D).  As such, claims for maintenance and cure are construed expansively, with any ambiguities and doubts resolved in favor of the seaman. Flores, 47 F. 3d at 1123.   To recover for maintenance and cure, a plaintiff need only prove that: (1) he worked as a seaman; (2) he became ill or injured while in the vessel's service; and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury. West v. Midland Enterprises, Inc., 227 F.3d 613, 616 (6th Cir.2000) (citing Freeman v. Thunder Bay Transp. Co., 735 F.Supp. 680, 681 (M.D.La.1990)).

       The Eleventh Circuit Court of Appeals has acknowledged the concept of maintenance and cure as an "almost paternalistic duty of the shipowner toward the crew." Garay , 904 F.2d at 1530 citing Farrell v. U.S., 336 U.S. 511, 516 (1949) ("Aside from gross misconduct or insubordination, what the seaman is doing and why and how he sustains injury does not affect his right to maintenance and cure, however decisive it may be as to claims for indemnity or for damages for negligence...."). As a result of this liberal interpretation of the seaman's entitlement to maintenance and cure, the concept of "fault" does not play a role in the determination. Bloom, 225 F. Supp. 2d at 1335 citing Norris, supra, at § 26:1; Adams v. Texaco, Inc., 640 F.2d

618, 620 (5th Cir.1981)[8] ("The shipowner's obligation to pay maintenance and cure to an injured seaman is not based on fault but results from the relationship of ship and seaman.").

While a seamen is afforded a broad right to receive maintenance and cure, that right is not absolute. Specifically, there is no duty to provide maintenance and cure for an injury that results from a seaman's own willful misconduct. Garay, 904 F. 2d at 1530. Inclusive in this situation would be a scenario where the plaintiff has willfully concealed a pre-existing medical condition from the employer. Jauch v. Nautical Services, Inc., 470 F.3d 207, 212 (5th Cir. 2006) ("A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed.")  When an injured seaman has "willfully concealed from his employer a preexisting medical condition", the employer may deny maintenance and cure if three elements are satisfied. McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir.1968), cert. denied , 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968). Under McCorpen, recovery may be denied if the shipowner is able to establish that  (1) the seaman intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the seaman; and (3) a causal connection exists between the withheld information and the injury complained of in the lawsuit. Id. at 548-549.

In support of its contention that there is a issue of fact regarding plaintiff's "good faith belief in his fitness for duty when he reported for service aboard the vessel" defendant points to

---

[8] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

the deposition testimony of Richard Wyatt, the captain of the M/V CRIMSON WHITE. Captain Wyatt recalls that shortly after plaintiff boarded the vessel on August 7, 2007, he commented that his left knee was bothering him, and that he was going to have to have surgery on his left knee. In his deposition testimony Captain Wyatt stated, in part:

> Q: Okay. When did he make the complaint to you about his left knee?
>
> A: When he first got on.
>
> Q: What did he say?
>
> A: He had done had surgery on one, he was going to have to have surgery on the other one before it was over with.

(Doc. 37, Exhibit 1, Deposition of Captain Richard Wyatt, p. 97)

Defendant also relies on the testimony of plaintiff's shipmate, Gerald Bowe. Mr. Bowe states that he observed plaintiff fall in the Wal-Mart parking lot three to five days *prior* to August 12, 2007, as they were purchasing groceries for the vessel's crew. In conjunction with that testimony, defendant also points to the testimony of Dr. Nicholas, who stated that his diagnoses of plaintiff's injury was consistent with the event described by plaintiff, but that he could not state with medical certainty "whether or not [plaintiff's] injury at work August 12, 2007, actually caused his meniscus to tear for the first time." (Doc. 37, Exhibit 8, Deposition of Dr. Raymond Lee Nichols, p. 24) Dr. Nichols further opined that knee pain from a meniscus tear could cause a subsequent fall. (Id. at pp. 47, 50) [9]

Plaintiff disputes that he made any comment regarding an injury to his left knee to Captain Wyatt and further disputes that he fell in the Wal-Mart parking lot. While this reflects a

---

[9] Dr. Nichols testified that he did not query plaintiff regarding any prior injuries to his left knee.

factual dispute between the parties, it does not support defendant's position that plaintiff misrepresented or hid a preexisting injury such that his right to maintenance and cure would be adversely affected. See Lofton v. Sec'y of the Dep't of Children & Family Serv., 358 F.3d at 809 (only factual disputes that are material preclude entry of summary judgment)  Defendant's contention that plaintiff concealed a prior injury is speculative, at best.  Plaintiff was given a preemployment medical examination and was certified fit for duty.  Defendant's contention that plaintiff misrepresented his condition is simply not supported by the evidence.  See Parker v. Jackup Boat Service, LLC, 542 F.Supp.2d 481 (E. D. La., 2008.) ("[E]ven an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." ); Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1081 (3rd Cir. 1995) ("[N]ondisclosure of a pre-existing injury, without more, will not result in a seaman's loss of maintenance and cure.")

Moreover, even if plaintiff injured his left knee on August 7, 2007 while obtaining groceries for the vessel when he was allegedly observed by Gerald Bowe to have slipped and fallen at a Walmart, Cooper Marine would be liable for maintenance and cure for any injuries suffered in such a fall.  Defendant concedes as much in its opposition brief.  (Doc. 37 at pp. 17-18) See Stevens v. McGinnis, Inc., 82 F.3d 1353, 1357-58 (6th Cir.1996)("A shipowner must pay maintenance and cure for any illness which occurred, was aggravated, or manifested itself while the seaman was in the ship's service.")  Likewise, plaintiff's comment to Captain Wyatt is vague and insufficient to create an issue of fact.  See Vaughan v. Atkinson, 369 U.S. 527, 531-32 (1962) ("Admiralty courts have been liberal in interpreting this [maintenance and cure] duty for

the benefit and protection of seaman who are its wards.... When there are ambiguities or doubts, they are resolved in favor of the seaman.") (internal quotation marks and citation omitted)

In the last analysis, defendant has not presented any evidence, medical or otherwise, that plaintiff misrepresented his medical condition or the nature of his injuries to defendant such that he should be denied maintenance and cure.  See Patterson v. Allseas USA, 145 Fed. Appx. 969 (5th Cir. 2005) (declining to consider whether the employer could obtain restitution of maintenance and cure payments because the employer failed to prove the elements necessary to establish a defense of willful concealment). Accordingly, plaintiff's motion for partial summary judgment as to defendant's counterclaim is GRANTED.

V.    Conclusion

Based on the foregoing, plaintiff's motion for partial summary judgment as to defendant's counterclaim for recoupment is **GRANTED.**

**DONE** and **ORDERED** this the 14th day of January 2009.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**